***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. An employer-employee relationship existed between Defendant-Employer and Plaintiff on the respective alleged injury dates of August 30, 2007, and June 1, 2008.
3. Defendant-Employer is self-insured for its workers' compensation coverage.
4. Plaintiff's average weekly wage for purposes of these claims is $612.89.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms for I.C. No. 793827 (date of injury 8/30/07)
 • Exhibit 3: Industrial Commission Forms for I.C. No. 093568 (date of injury 6/1/08)
 • Exhibit 4: Form 22 and wage information
 • Exhibit 5: Plaintiff's discovery responses for I.C. No. 793827
 • Exhibit 6: Plaintiff's discovery responses for I.C. No. 093568
 • Exhibit 7: Plaintiff's medical records
 • Exhibit 8: Dr. Getz records review dated 7/28/08
 • Exhibit 9: Employment file
Transcripts of the depositions of the following were also received into evidence by the Deputy Commissioner:
 • Robert Bruce Wynn
 • Elaine Marie Little
 • Dr. Wan Chung (with Defendants' Exhibit 1) *Page 3 
 • Dr. Ira Hardy
 • Dr. Phillip Perkins (with Exhibit 1)
 • Dr. David Miller
 • Dr. David Dalsimer
 • Dr. Divya Patel
 • Dr. Donald Getz
 *********** ISSUES
1. Whether Plaintiff sustained a compensable injury to his low back by specific traumatic incident on August 30, 2007;
2. Whether Plaintiff suffered the onset of a compensable occupational disease on or about June 1, 2008; and
3. To what compensation, if any, is Plaintiff entitled.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 61 years old at the time of the hearing before the Deputy Commissioner, with a date of birth of November 1, 1948.
2. Plaintiff began working with Defendant-Employer at its Robersonville, North Carolina, store in August 2006.
3. Before starting at the Robersonville Food Lion store, Plaintiff worked for a barbecue restaurant for about four years. While working with that restaurant, Plaintiff sustained *Page 4 
two injuries to his back, in June 2005 and again on July 12, 2006. Both injuries occurred while Plaintiff was unloading a truck.
4. Plaintiff underwent a laminectomy at L5-S1 in 1984.
5. Following his July 12, 2006 injury, Plaintiff treated on three different dates in July 2006 with Pamlico Urgent Care, with a diagnosis of chronic back pain. He was taken out of work for a time for said injury. He was last treated for said injury on July 27, 2006.
6. While Plaintiff was out of work for the July 2006 injury, he learned of a job opening with Defendant-Employer. He applied and was hired as a meat cutter, and that was the job Plaintiff started in August 2006 at the Robersonville Food Lion store.
7. Plaintiff's job as a meat cutter required him to spend between two and a half and five hours out of every eight-hour workday retrieving beef from the cooler, cutting it and wrapping it for display.
8. When he cut the beef, Plaintiff held the knife in his right, dominant hand and held the meat with his left hand. With each cut, Plaintiff would lay the cut piece to the side with his left hand.
9. To wrap the cuts of beef, Plaintiff would use his thumb, index and middle fingers on both hands to wrap the clear film around the tray and cut of beef, then he would use both hands to wrap the edges of the film under the package and put the price tag on it.
10. Plaintiff also sometimes had to maneuver larger pieces of beef through a meat saw.
11. The other types of meat, such as chicken and pork, came pre-packaged and did not have to be cut. *Page 5 
12. From the time he started with Defendant-Employer in August 2006 until August 30, 2007, Plaintiff was entirely physically able to perform all of his job duties as a meat cutter, including unloading trucks without special assistance. He had some right leg pain doing his job, but it did not limit him. He did not miss work for back pain. He took prescription pain medications such as Darvocet to manage his back pain.
13. On August 30, 2007, Plaintiff was stacking 80-pound boxes onto a rack. As he picked up a box, he felt a pop and severe, stabbing pain in his low back and pain into both legs. The pain was similar to what he had experienced in prior back injuries, but "harder."
14. The next day, Plaintiff woke up with 6/10 pain in his legs. He went to his primary care physician, Dr. Chung, who diagnosed Plaintiff with a back strain, wrote him out of work, and referred him to Dr. Miller.
15. Plaintiff presented to Dr. Miller, an orthopedic surgeon, on September 7, 2007. Plaintiff reported the onset of sharp back pain with the August 30, 2007 incident, along with pain radiating into his buttocks and down the backs of both thighs, with numbness and tingling in both thighs, worse on the right. Dr. Miller's physical exam was consistent with Plaintiff's complaints.
16. Dr. Miller recommended a lumbar MRI, which was done on September 19, 2007 and showed problems at L4-5 and L5-S1, including narrowing of the nerve root outlets. The MRI results were consistent with Plaintiff's complaints.
17. Dr. Miller wrote Plaintiff out of work on September 7, 2007 and again on September 26, 2007. *Page 6 
18. Plaintiff had improvement of his symptoms with an epidural steroid injection, which bolstered Dr. Miller's impression that Plaintiff's symptoms were related to nerve root irritation in his lower lumbar spine.
19. On November 12, 2007, Dr. Miller released Plaintiff to return to light duty work.
20. Plaintiff returned to work on or about November 13, 2007, working light duty for about five days, then returning to full duty.
21. Dr. Miller last saw Plaintiff on February 4, 2008. Dr. Miller discharged Plaintiff from his treatment that day, with the option to return as needed should Plaintiff decide to pursue the surgery that Dr. Miller recommended, a laminectomy with fusion at L5-S1.
22. On April 7, 2008, upon Dr. Miller's referral, Plaintiff presented to Dr. Patel, a physiatrist, for pain management. As of the hearing before the Deputy Commissioner, Dr. Patel was continuing to treat Plaintiff with a regimen of prescription pain medications.
23. In the spring of 2008, Plaintiff had problems with his hands, including numbness in his fingertips. Dr. Patel referred him to Dr. Dalsimer for treatment.
24. Dr. Dalsimer first saw Plaintiff on August 12, 2008. He diagnosed Plaintiff with arthritis of the first CMC joints on both thumbs as well as bilateral carpal tunnel syndrome.
25. Dr. Dalsimer performed a right carpal tunnel release on August 28, 2008, after which Plaintiff was written out of work for about six weeks.
26. Dr. Dalsimer performed a left carpal tunnel release with decompression of the left thumb joint on December 2, 2008, after which Plaintiff was written out of work for about two months. *Page 7 
27. As of the hearing before the Deputy Commissioner, Plaintiff had continued to work, with pain, in his meat cutter position since his return to work in November 2007. Plaintiff's back and leg pain had worsened since the incident on August 30, 2007.
28. Dr. Hardy is a neurosurgeon. He performed Plaintiff's back surgery in 1984. Plaintiff returned to him in July 2005 with increasing discomfort in his back and both legs, with occasional tingling in his legs. Dr. Hardy did a lumbar myelogram on July 28, 2005, after which Dr. Hardy felt that Plaintiff might be a surgical candidate in the future if his pain worsened. Dr. Hardy believed at that point that Plaintiff could have gone several years without surgery and that the need for surgery would be determined in large part by his subjective symptoms. Dr. Hardy felt as of July 2005 that Plaintiff would continue to need pain medications for his low back, but he did not refer Plaintiff to pain management.
29. Dr. Miller is fellowship-trained in spinal surgery, and spinal surgery makes up about 95 percent of his practice. As Dr. Miller testified, the August 30, 2007 lifting incident caused an exacerbation of Plaintiff's pre-existing back condition. As he further testified, Plaintiff's pain level remained exacerbated from said incident as of Plaintiff's last visit to Dr. Miller on February 4, 2008.
30. As Dr. Miller further testified, the surgery that he proposed for Plaintiff would effect relief of the symptoms that were exacerbated in the August 30, 2007 incident.
31. Dr. Miller stated his opinions in light of Plaintiff's history of back issues prior to the incident, and based upon the assumptions that Plaintiff did not seek medical treatment for his low back condition during the period from July 27, 2006 through August 30, 2007 and that Plaintiff was truthful that his pain substantially worsened with the incident. *Page 8 
32. Dr. Miller noted that the findings on Plaintiff's September 19, 2007 MRI were much worse than those on his July 28, 2005 myelogram. However, he could not state that any of the findings on the 2007 MRI were directly related to the August 30, 2007 incident, and he stated that his causation opinions were based purely on Plaintiff's subjective descriptions of his pain levels before and after the incident. Dr. Miller had no clear indication, other than Plaintiff's new complaint of more severe pain following the incident, that Plaintiff would not have needed to have surgery anyway even absent the incident. Nonetheless, as Dr. Miller testified, he never had any reason to doubt the sincerity of Plaintiff's history and complaints.
33. Also purely based on Plaintiff's pain complaints, Dr. Patel opined that the August 30, 2007 incident materially aggravated Plaintiff's pre-existing low back condition. As Dr. Patel further testified, her ongoing pain management treatment of Plaintiff has been related to the incident.
34. Dr. Chung testified that it was hard for him to tell if the August 30, 2007 incident aggravated Plaintiff's pre-existing low back condition. However, he would not disagree with Dr. Miller's causation opinion.
35. Dr. Getz, formerly a practicing orthopedic surgeon, did a review of Plaintiff's medical records for Defendants but never saw Plaintiff. He opined that any surgery for Plaintiff's back at this point would not be related to any specific injury Plaintiff may have suffered on August 30, 2007, but would rather address Plaintiff's degenerative disc disease generally.
36. As between the causation opinions of Drs. Miller and Patel and Dr. Getz, the Full Commission accords more weight to the testimony of Drs. Miller and Patel, as the physicians who have actually treated Plaintiff since the August 30, 2007 incident. *Page 9 
37. Dr. Dalsimer, an orthopedic surgeon, believed that Plaintiff's osteoarthritis in the first CMC joints of his thumbs led to his bilateral carpal tunnel syndrome. He described the osteoarthritis as normal wear-and-tear for any "working male" of Plaintiff's age. Dr. Dalsimer could not say that Plaintiff's job duties with Defendant-Employer put him at an increased risk, over that faced by the general population, of developing osteoarthritis and/or carpal tunnel syndrome.
38. The Full Commission finds that the greater weight of the evidence in this claim reveals that Plaintiff had back problems for many years but that his back problems worsened significantly with the August 30, 2007 lifting injury. The greater weight of the evidence further reveals that the substantial increase in his subjective pain level occasioned by said injury transformed Plaintiff from a potential surgical candidate into an actual one. The greater weight of the expert medical opinion in this claim establishes that the August 30, 2007 incident caused an ongoing material aggravation of Plaintiff's pre-existing low back condition. As such, the Full Commission finds that Plaintiff has shown that he sustained a compensable aggravation of his pre-existing low back condition by specific traumatic incident on August 30, 2007.
39. The Full Commission finds that the medical treatment that Plaintiff has received for his lower back condition since August 30, 2007 with Drs. Chung, Miller and Patel has been reasonably required to effect a cure, provide relief and/or lessen Plaintiff's period of disability.
40. With respect to Plaintiff's claim for occupational disease, the Full Commission finds that Plaintiff has not shown that his job duties with Defendant-Employer placed him at an increased risk, over that faced by the general population, of developing osteoarthritis and/or carpal tunnel syndrome. Accordingly, the Full Commission finds that Plaintiff has not shown that he is entitled to compensation for his osteoarthritis and/or bilateral carpal tunnel syndrome. *Page 10 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The greater weight of the evidence in this claim, including expert medical opinion, establishes that the August 30, 2007 incident caused a material aggravation of Plaintiff's pre-existing low back condition. As such, Plaintiff has shown that he sustained a compensable aggravation of his pre-existing low back condition by specific traumatic incident on August 30, 2007. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has not shown that he suffered the onset of a compensable occupational disease, in that he has not shown that his job duties with Defendant-Employer placed him at an increased risk, over that faced by the general population, of developing osteoarthritis and/or carpal tunnel syndrome. As such, Plaintiff is not entitled to compensation for his osteoarthritis and/or bilateral carpal tunnel syndrome. N.C. Gen. Stat. § 97-53(13).
3. Plaintiff has shown that he was totally disabled by his compensable low back condition, in that he was medically unable to work because of said condition, during the period from August 31, 2007 through November 12, 2007. As such, he is entitled to temporary total disability compensation for such period. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have Defendants provide him with medical treatment for his compensable low back condition, including but not limited to diagnostic testing and imaging, surgery, physical therapy, pain management, prescriptions, referrals and mileage. Plaintiff is also entitled to have Defendants pay for the medical treatment he has heretofore received for his compensable low back condition with Drs. Chung, Miller and Patel, including but not limited to *Page 11 
diagnostic testing and imaging, injections, pain management, prescriptions and mileage. N.C. Gen. Stat. § 97-2(19) and 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff temporary total disability compensation in the weekly amount of $408.61 from August 31, 2007, through November 12, 2007, subject to the attorney's fee provided herein. This compensation has accrued and shall be paid to Plaintiff in a lump sum.
2. Plaintiff's claim for an occupational disease must under the law be, and is hereby, DENIED.
3. Defendants shall pay for the medical treatment Plaintiff has heretofore received for his compensable low back condition with Drs. Chung, Miller and Patel, including but not limited to diagnostic testing and imaging, injections, pain management, prescriptions and mileage. To any extent that Plaintiff and/or any third-party payor has paid for such treatment, Defendants shall reimburse such payor in full.
4. Drs. Miller and Patel are hereby designated as Plaintiff's authorized treating physicians for his compensable low back condition, and Defendants shall, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, authorize and pay for the treatment that either of them recommends for said condition, including but not limited to diagnostic testing and imaging, surgery, physical therapy, pain management, prescriptions, referrals and mileage. Specifically, *Page 12 
Defendants shall authorize and pay for the surgery that Dr. Miller has recommended, provided that Dr. Miller continues to recommend it and that Plaintiff wishes to undergo it.
5. Defendants shall pay directly to Plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to Plaintiff herein. Because the compensation upon which this fee is based has accrued, Defendants shall pay Plaintiff's counsel in a lump sum.
6. Defendants shall pay the costs including expert witness fees, if not paid by prior order.
This ___ day of August 2010.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER